**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------
RYAN O'DELL,                              :
                                          :
              Plaintiff,                  :
                                          :
v.                                        :
                                          :
TENNECO INC., ROY V. ARMES,               :
THOMAS C. FREYMAN, DENISE GRAY,           :
BRIAN J. KESSELER, MICHELLE A.            :
KUMBIER, DENNIS J. LETHAM, JAMES S.       :
METCALF, ALEKSANDRA A. MIZIOLEK,          :
CHARLES K. STEVENS, III, JOHN S.          :
STROUP, and JANE L. WARNER,               :
                                          :
              Defendants.                 :
--------------------------------------------------
```

Civil Action No. 22-cv-2135

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.     This is an action brought by Plaintiff against Tenneco Inc. ("Tenneco or the "Company") and the members Tenneco's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Tenneco by affiliates of Apollo Global Management, Inc. ("Apollo")

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 15, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Pegasus Merger Co. ("Merger Sub"), a wholly-owned subsidiary of Pegasus Holdings III, LLC ("Parent"), will merge with and into Tenneco with Tenneco surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 22, 2022 (the "Merger Agreement"), each Tenneco stockholder will receive $20.00 in cash (the "Merger Consideration") for each Tenneco share owned. Parent and Merger Sub are both affiliates of Apollo.

1.      As discussed below, Defendants have asked Tenneco's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tenneco's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

7.      Plaintiff is, and has been at all relevant times, the owner of Tenneco stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant Roy V. Armes has served as a member of the Board since March 2020.

9.      Individual Defendant Thomas C. Freyman has served as a member of the Board since 2013.

10.     Individual Defendant Denise Gray has served as a member of the Board since March 2019.

11.     Individual Defendant Brian J. Kesseler has served as a member of the Board since 2016 and is the Company's Chief Executive Officer.

12.     Individual Defendant Michelle A. Kumbier has served as a member of the Board since 2021.

13.     Individual Defendant Dennis J. Letham has served as a member of the Board since 2007 and as Chairman since July 2020.

14.     Individual Defendant James S. Metcalf has served as a member of the Board since 2014.

15.     Individual Defendant Aleksandra A. Miziolek has served as a member of the Board since March 2020.

16.     Individual Defendant Charles K. Stevens, III has served as a member of the Board since February 2020.

17.     Individual Defendant John S. Stroup has served as a member of the Board since September 2020.

18.     Individual Defendant Jane L. Warner has served as a member of the Board since 2004.

19.     Defendant Tenneco a Delaware corporation and maintains its principal offices at 500 North Field Drive, Lake Forest, IL 60045 until March 31, 2022, and then at 7450 McCormick Blvd., Skokie, IL 60076.  The Company's stock trades on the New York Stock Exchange under the symbol "TEN."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     __The Proposed Transaction__

22.     Tenneco designs, manufactures, and sells clean air, and powertrain products and systems for light vehicle, commercial truck, off-highway, industrial, motorsport, and aftermarket

customers worldwide. It operates through four segments: Motorparts, Performance Solutions, Clean Air, and Powertrain. The Motorparts segment offers shock and strut, steering and suspension, braking, sealing, emissions control, engine, and maintenance products under the Monroe, Champion, Ã hlins, MOOG, Walker, Fel-Pro, Wagner, Ferodo, Rancho, Thrush, National, Sealed Power, and other brands. The Performance Solutions segment designs, manufactures, markets, and distributes noise, vibration, and harshness performance materials; advanced suspension technologies; and ride control, braking, and systems protection products. The Clean Air segment offers catalytic converters and diesel oxidation catalysts; diesel particulate filters; burner systems; lean nitrogen oxide (NOx) traps; selective catalytic reduction (SCR) systems; hydrocarbon vaporizers and injectors; SCR-coated diesel particulate filters systems; urea dosing systems; four-way catalysts; alternative NOx reduction technologies; mufflers and resonators; fabricated exhaust manifolds; pipes; hydroformed assemblies; elastomeric hangers and isolators; and aftertreatment control units. The Powertrain segment provides pistons, piston rings, piston pins, cylinder liners, valvetrain products, valve seats and guides, ignition products, dynamic seals, bonded piston seals, combustion and exhaust gaskets, static gaskets and seals, engine bearings, industrial bearings, and bushings and washers. The Company was formerly known as Tenneco Automotive Inc. and changed its name to Tenneco Inc. in 2005. Tenneco was incorporated in 1996 and is based in Lake Forest, Illinois.

23.    On February 23, 2022, the Company announced the Proposed Transaction:

LAKE FOREST, Ill., Feb. 23, 2022 /PRNewswire/ -- Tenneco (NYSE: TEN) announced today it has entered into a definitive agreement to be acquired by funds managed by affiliates of Apollo (NYSE: APO) (the "Apollo Funds") in an all-cash transaction with an enterprise valuation of approximately $7.1 billion, including debt.

The purchase price of $20.00 per share represents a 100.4% premium over the Company's closing share price

of $9.98 on February 22, 2022 and a 71.6% premium over the Company's unaffected 90-day VWAP. Upon completion of the transaction, Tenneco's shares will no longer trade on the New York Stock Exchange, and Tenneco will become a private company. Tenneco will continue to operate under the Tenneco name and brand and maintain a global presence.

"We are pleased to have reached this agreement with Apollo, which we believe will deliver immediate and certain cash value to Tenneco shareholders at a substantial premium," said Dennis Letham, Chairman of the Board of Tenneco. "The Board's decision follows careful evaluation of the transaction and thoughtful and comprehensive review of value creation opportunities for Tenneco. We believe this transaction is the right path forward and achieves our goal of maximizing value for Tenneco shareholders, and will benefit our team members, customers and business partners around the world."

"Over the last several years, Tenneco has transformed its business to succeed in today's environment. This transaction marks a significant milestone and will provide us with a new and exciting platform from which we can continue our global strategy in an evolving and dynamic mobility landscape," said Brian Kesseler, Tenneco's chief executive officer. "In Apollo, we have a partner that recognizes the strength of our product portfolio and our ability to serve leading OEM and aftermarket blue-chip customers globally. Specifically, this partnership will allow us to continue to invest in and grow Tenneco's multiple segments and global footprint. This transaction is also a testament to the achievements of our global team, whose commitment and focus during these extraordinary times have enabled our success."

Apollo Partner Michael Reiss said, "Tenneco is a key solutions provider for global mobility markets with a long-held commitment to innovation and high-quality service. We look forward to working with the Tenneco team to build on the strong foundation in place today, investing across their platform and product categories for growth and delivering innovative solutions for customers."

**Approvals and Timing**

The transaction, which has been unanimously approved by the Tenneco Board of Directors, is expected to close in the second half of 2022, subject to customary closing conditions, including approval by Tenneco shareholders and receipt of regulatory approvals. The transaction is not subject to a financing condition.

**Fourth Quarter and Full-Year 2021 Results**

In a separate press release, Tenneco today announced its financial results for the fourth quarter and fiscal year ended December 31, 2021, which is accessible by visiting the Investor Relations section of the Tenneco corporate website at Investors | Tenneco Inc. In light of the announced transaction with Apollo, Tenneco has cancelled the earnings conference call previously scheduled for February 24.

**Advisors**

Lazard is serving as financial advisor to Tenneco, and Latham & Watkins LLP is acting as legal counsel.

Rothschild & Co acted as lead financial advisor to the Apollo Funds on the transaction. BofA Securities and Citi also acted as financial advisors to the Apollo Funds. Wachtell, Lipton, Rosen & Katz is serving as legal counsel and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as financing counsel to the Apollo Funds.

* * *

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Tenneco's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On March 15, 2022, Tenneco filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Tenneco management and relied upon by Lazard in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Lazard (and sometimes calculated by Lazard) with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that the Proxy provided. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Value Added Revenue, EBITDA, Free Cash Flow, and Unlevered Cash Flow, Unlevered Free Cash Flows (Enterprise), and Unlevered Free Cash Flows (ROI), but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.    The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Financial Analyses_

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     With respect to Lazard's *Comparable Public Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the companies observed by Lazard in the analysis.

32.     With respect to Lazard's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the transactions observed by Lazard in the analysis.

33.     With respect to Lazard's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal valus of Tenneco; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2022 through 2026; (iii) the inputs and assumptions underlying the use of a range of exit EBITDA multiples of 4.0x to 5.0x; (iv) the inputs and assumptions underlying the use of the range of discount rates of 10.5% to 11.5%; and (v) the estimated weighted average cost of capital for the Company.

34.     With respect to Lazard's *Leveraged Buyout Return Analysis*, the Proxy Statement fails to disclose: (i) the inputs and basis underlying the assumption of a five-year investment period; (ii) the inputs and assumptions underlying the use of target internal rates of return ranging from 15% to 20%; (iii) the inputs and assumptions underlying the total leverage at closing of 4.2x 2021 and an exit multiple of 4.0x to 5.0x.

35.     With respect to Lazard's *Broker Target Prices* analysis, the Proxy Statement fails to disclose the broker analysts observed and their per share price targets.

36.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

### **On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44.     The Individual Defendants acted as controlling persons of Tenneco within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Tenneco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Tenneco, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tenneco, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

47.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 15, 2022                    **MELWANI & CHAN LLP**

                                         By:  */s/ Gloria Kui Melwani*

Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*